The SUN MUTUAL INSURANCE COMPANY, PLAINTIFF IN ERROR, *v.* JOHN S. WRIGHT, USE OF MAXWELL, WRIGHT, & Co.

The principles with respect to a policy of insurance in the preceding case of the Orient Mutual Insurance Company against Wright, reaffirmed in the present case.

In the correspondence which took place between the insurer and the insured, there was no waiver by the former of the right of fixing the premium, nor was it claimed or suggested in the communications between the parties at the time.

THIS case was brought up by writ of error from the Circuit Court of the United States for the district of Maryland.

It was entirely similar to the preceding case, except that it was contended that the insurance company had waived the right of fixing the premium by the conduct of the agent and correspondence between the parties.

It was argued by *Mr. Cutting* for the plaintiff in error, and by *Mr. May* and *Mr. Brent* for the defendant.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the district of Maryland.

The suit below was upon a policy of insurance brought by the plaintiff to recover a loss upon coffee on board the vessel Mary W. on a voyage from Rio de Janeiro to a port in the United States. The questions involved are substantially the

same as have been examined in the case of the same plaintiff against the Orient Mutual Insurance Company, and the decision in that governs the present one.

It was insisted in this case, on the part of the plaintiff below, that the company had waived the question as to the premium on the declaration or report of the Mary W., as it was bound by the act of the agent in making the endorsement on the policy, who added simply the words, "not to attach if the vessel proved unseaworthy."

The company were advised, by a letter of their agent, dated August 23, 1856, of the application of the plaintiff to have the coffee in question on the Mary W. entered on his policy; and on the 25th of the month they answered, directing the agent to inform the plaintiff of the facts the company had previously communicated to R. C. Wright, a brother, in relation to the vessel, and that they regarded her an entirely unfit vessel for a cargo of coffee, and should not consider the policy as attaching to the cargo.

The correspondence with R. C. Wright on the subject was under date of the 14th August, same year, and which related to a different shipment of coffee on the same vessel.

The plaintiff, notwithstanding the objections of the company, insisted upon his right to have the coffee covered by the policy, and so advised the agent, who communicated the information to the company. On the 26th of the month, they, still insisting that the vessel was unfit for such a cargo, instructed the agent to inform the plaintiff that if he claimed the property to be covered by the policy, he must consider it subject to the risk of the policy not attaching from the unseaworthiness of the vessel. Upon this, the agent entered the coffee upon the policy, with the words, "not to attach if vessel be proved unseaworthy," and so advised the company. They, on receiving this advice, immediately informed the agent that the endorsement was a practical nullity, and directed him to inform the plaintiff that they conceded his right to be covered by the policy, and that they had no other remedy but to name a premium commensurate to the risk, and fixed the premium at ten per cent., subject to the conditions of the policy, or two

and a half per cent. upon a total loss. In answer to this, the plaintiff objected to the premium, insisting, if the Mary W. rated below A 2, the company were only entitled to an equitable rate of premium; and if they and he could not agree, it was a proper case for a reference.

The company, in answer to this, respond, that they had reserved the right in the policy to fix the premium in case of vessels rating below A 2, and that they could not consent to its determination by a third person. The plaintiff again denied the right of the company to fix the premium, and thus the correspondence terminated.

It is quite apparent that there was no waiver of this right of fixing the premium on the part of the company, nor was it claimed or suggested in the communications between the parties at the time.

Judgment reversed, and a *venire de novo* awarded.

Mr. Justice CLIFFORD dissenting.

I dissent from the opinion of the court in this case; and inasmuch as the question presented is one of considerable importance, I think it proper to state the reasons of my dissent.

John S. Wright, the present defendant, sued the plaintiffs in error on a policy of insurance, to recover for a total loss of a cargo of coffee, shipped from Rio de Janeiro to New Orleans on the schooner Mary W. As appears by the bill of lading, the goods were shipped at the port of departure as early as the twelfth day of July, 1856, and the vessel sailed for New Orleans on the same day. She had stormy weather after her departure; and on the twenty-ninth day of August following she was wrecked upon the rocks, and all her cargo was lost. Notice of the shipment was received by the plaintiff on the twenty-third day of August, 1856, and on that day he notified the agent of the defendants, residing in Baltimore, of the same, and requested him to enter under his policy the cargo of the vessel, which consisted of coffee, valued at eighteen dollars per bag.

By the terms of the policy the plaintiff was insured, "on account of whom it may concern—loss payable to them.

lost or not lost—at and from Rio de Janeiro to a port of the United States, on one-half of five thousand bags of coffee, each two hundred bags in running marks and numbers, in order of invoice, subject to separate average, upon all kinds of lawful goods and merchandise laden on board of the good vessel or vessels, beginning the adventure upon the said goods and merchandises from and immediately following the loading thereof on board the said vessel at the place of shipment as aforesaid, and so shall continue until the said goods and merchandise shall be safely landed at the place of destination, as aforesaid."

Another clause was, that "the said goods and merchandise hereby insured are valued at eighteen dollars per bag, as interest may appear."

Payment of the consideration by the assured is expressly acknowledged by the terms of the policy, at and after the rate of one and one-half per cent.—to return one-fourth per cent., if direct to an Atlantic port; to add an additional premium, if by vessels rating lower than A 2, or by foreign vessels, subject to such addition or deduction as shall make the premiums *conform to the established rate at the time the return is made to the company.*

Some reference to the correspondence between the parties becomes necessary, in order that the true nature of the controversy may be fully and clearly understood.

Defendants are a corporation, doing business in the city of New York; but they have an authorized agent in Baltimore, where the defendant resides. Their agent informed them by letter, under date of the twenty-third of August, 1856, that the plaintiff on that day had requested him to enter this cargo under his policy; and in the same letter stated the amount of the goods and the name of the vessel. To that letter the defendants replied three days afterwards, saying that they considered the vessel entirely unfit for a cargo of coffee, and should not consider their policy as attaching thereto.

That information was communicated to the plaintiff by the agent on the following day; but the plaintiff insisted that the goods were covered by the policy; and on the same day the

defendants were informed by their agent that the plaintiff did so insist. They were also furnished by their agent at the same time with a letter from the plaintiff, giving his reasons for insisting that the cargo should be entered under the policy. In that letter he stated that the sole object of open or running policies would be defeated, if the underwriters were at liberty to decline any risk that might arise under them; and repeated, that he considered the defendants bound, by the spirit as well as the letter of their policy, to cover the goods at risk on this vessel.

Each party was thus fully possessed of the views of the other, and of all the circumstances of the case. Neither appears to have entertained a doubt as to the validity of the contract, and the only matter in dispute between them was the fitness of the vessel for such a cargo. But they had further correspondence, which it is important to notice, in order to understand the real nature of the controversy between the parties. Following the order of events, the next letter is the reply of the defendants to their agent, which is dated the twenty-sixth day of August, 1856, three days before the loss, and more than forty days after the vessel had departed on her voyage. In that letter they say, after acknowledging the receipt of the one to which it was a reply, that, with regard to the case of the schooner under the policy of the plaintiff, they can only repeat their belief that she is an unfit vessel for such a cargo, which makes her an unseaworthy risk, and request their agent to say to the plaintiffs, that if he deems the property covered by the policy, *he must so consider it subject to the risk of the policy not attaching from the unseaworthiness of the vessel.*

Pursuant to that letter, the agent of the defendants two days afterwards wrote to the plaintiff, that the president of the company " has requested me to say to you, that he will cover for the schooner Mary W., but you must consider it subject to the risk of the policy not attaching from the unseaworthiness of the vessel," and made the endorsement on the policy as follows, dating it on the preceding day:

" August 27, 1856. Schooner Mary W., Rio de Janeiro to

*Sun Mutual Insurance Company* v. *Wright et al.*

New Orleans, on ½ /cargo, 1,830 bags of coffee, at $18 per bag—not to attach if vessel be proved unseaworthy—$16,470."

When that endorsement was made, in my judgment the contract became complete, leaving the additional premium to be equitably adjusted between the parties, according to established rate of vessels rating under A 2; or, in case of dispute, to be settled, like any other controversies, by the judicial tribunals. E. Carver Co. *v.* Manf. Ins. Co., 6 Gray, 214.

On the following day the agent informed the defendants that he had made the endorsement. To that letter they replied on the twenty-ninth day of the same month, saying, in effect, that the condition inserted in the endorsement was practically a nullity; and as a reason for that conclusion, they add, that no risk attaches if the vessel is proven to be unseaworthy, but the difficulty is, so to prove them. After some other remarks, which it is not important to notice, they go on to say, that no other remedy remains except to name a premium commensurate with the risk, which they therein insist it is their right to do. Accordingly, they fix ten per cent., subject to the conditions of the policy, or two and a half per cent. against a total loss, and direct their agent to notify the plaintiff of their action in the premises, that he may determine on which rate he wanted the risk entered. That notice was given to the plaintiff by the agent on the second day of September following. He objected to the rates named as exorbitant, but admitted the right of the company to an equitable rate, and insisted that the cargo was covered by the policy. His views were communicated by the agent to the defendants on the third day of September, 1856, and on the following day they struck the risk from their books.

Evidence was introduced by the plaintiff that the premiums specified in the body of running policies are nominal, and that the true premiums to be charged are fixed by increasing or reducing the nominal premium when the risks are reported. Premium notes were given by the plaintiff in this case at the policy rate of one and one-half per cent., and were paid by him to the defendants at their maturity, long before the loss in this case. Sums paid for premiums on running policies,

according to the custom of this company, are returned if no risks are reported, but with a deduction of half per cent., which is retained by the company for their services. According to the testimony of the agent, he had no power to bind the company from the time of the application for insurance until the answer thereto was received from the company.

On this state of the case, the presiding justice instructed the jury as follows: "If the jury shall find from the evidence that the defendants executed the policy of the 27th of July, 1855, and received from the plaintiff the premium therein mentioned, and that their duly-authorized agent in this city made the endorsements on the policy which have been offered in evidence; and shall further find that 1,830 bags of coffee belonging to the plaintiff were shipped on the 12th day of July, 1856, at Rio, on board of the schooner Mary W., to be carried to New Orleans, and that when the schooner left Rio she was seaworthy and in good condition; and shall further find that the vessel and cargo were subsequently on the voyage totally lost by one of the perils insured against, and that the schooner was rated lower in New York than A 2, then the plaintiff is entitled to recover for one-half the value of the coffee so lost, at $18 per bag, *less such additional premium* beyond the 1½ per cent., as in the opinion of underwriters may be deemed adequate for the increased risk to a cargo of coffee shipped in a vessel rating below A 2; with interest from thirty days after such time as the jury may find the defendants were furnished by plaintiff with the preliminary proofs of his loss."

Under the instructions of the court, the jury returned their verdict for the plaintiff, and the defendants excepted. That instruction, so far as it is necessary to consider it at the present time, affirms that, by the true construction of the policy, the contract between the parties under the circumstances of this case, as disclosed in the evidence, was complete when the shipment of the goods was reported by the plaintiff, and the endorsement was made upon the policy by the authorized agent of the defendants. In that view of the case I entirely concur. When the report was forwarded by the agent, the only objection made to the risk was, that the vessel was un-

suitable, or that she was unseaworthy. That objection was repealed, and finally the plaintiff was told, that if he insisted upon the endorsement, it would only be made upon the condition that the policy should not attach if it turned out that the objection of the defendants was well founded. He accepted the condition, and the endorsement was so made. After the endorsement was made, it was too late for the defendants to reconsider the position they had voluntarily assumed. E. Carver Co. *v.* Manf. Ins. Co., 6 Gray, 214.

Suppose they had a right, as a condition precedent, to demand the payment of the additional premium before making the endorsement; they did not insist upon the right, but voluntarily waived it. They had already received the policy rate of one and one-half per cent., and to the present time have neglected to refund the same. Pre-payment of the policy rate was a sufficient consideration to uphold the contract; and certainly it will not be denied that they might waive the right to claim pre-payment of whatever might be due to them for the additional premium contemplated by the policy. But their right to demand the additional premium as a condition precedent to the endorsement cannot be admitted. Such a construction would defeat the policy, and therefore must be rejected, unless the language of the instrument is imperative to that effect. 1 Phil. Ins., sec. 438, and Kewley *v.* Ryan, 2 H. Black, 343. Policy rate is not the actual rate of adjustment between the parties in any case under this instrument, unless, perchance, it happens to be the established rate at the time the return is made to the company. Crawford *v.* Hunter, 8 Term, 16, note.

Addition or deduction from policy rate is to be made in all cases so as to make the sum paid and received conform to the established rate. Something, therefore, remains to be done in respect to every risk, irrespective of the character of the vessel. In case the shipment is by a vessel rating under A 2, or by a foreign vessel, an additional premium may be added; but there is no stipulation in the instrument that it shall be paid in advance of the endorsement; and there is nothing in the language of the instrument from which to infer that such was

the intention of the parties. That inference is wholly gratu-
itous, and, in my judgment, unfounded. When adjusted, the
sum to be paid must conform to the established rate at the
time the return was made to the company.

If the parties cannot agree what the established rate was at
that time, like other matters of controversy, it must·be settled
by the judicial tribunals. Harman *v.* Kenyston, 3 Camp.,
150; 1 Arnold on Ins., 175, 177; Smith's Mer. L., 208; U.
S. *v.* Wilkins, 6 Whea., p. 144. Unless this be the·true ·con-
struction of the policy, then it is a delusion which ought to be
shunned by every business man. Loss often occurs before
the notice of the shipment. The insured cannot adjust the
additional premium until he knows by what vessel the
shipment has been made, so that, if it be true that the con-
tract is incomplete until the additional premium is adjusted
and paid, then open or running policies for the insurance of
goods from distant ports are valueless. They are worse than ·
valueless, as generally understood, because they have the effect
to delude and deceive.

For these reasons, I am of the opinion that the judgment of
the Circuit Court ought to be affirmed.